IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


LAURA E. PLUTE,

        Plaintiff,

vs.                                Case No. 16-2658-SAC

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,[1]

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984

---

[1] On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security.

(10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in

substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform

3

their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On April 14, 2015, administrative law judge (ALJ) Michael D. Shilling issued his decision (R. at 20-26).  Plaintiff alleges that she has been disabled since April 1, 2012 (R. at

4

20). Plaintiff is insured for disability insurance benefits through March 31, 2014 (R. at 22). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date (R. 22). At step two, the ALJ found that plaintiff did not have any severe impairments or combination of impairments (R. at 22). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 26).

**III. Does substantial evidence support the ALJ's finding at step two that plaintiff does not have a severe impairment or combination of impairments?**

Plaintiff argues that substantial evidence does not support the ALJ's finding at step two. The burden of proof at step two is on the plaintiff. See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis). A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity"). A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.[2] Williams, 844 F.2d at 751.

---

[2] Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding

5

However, the claimant must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352 (10th Cir. 1997). A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled. 20 C.F.R. § 404.1512(c), § 416.912(c).

SSR 85-28 (Medical impairments that are not severe) states the following:

> A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. <u>If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process</u>.
>
> ...........

---

appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3; <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1123 (10th Cir. 2004).

> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.

1985 WL 56856 at *3, 4 (emphasis added).[3]

The step two determination is based on medical factors alone. Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004); Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003); Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988). The step two requirement is generally considered a de minimis screening device to dispose of groundless claims; thus, reasonable doubts on severity are to be resolved in favor of the claimant. Field v. Astrue, Case No. 06-4126-SAC, 2007 WL 2176031 at *4 (D. Kan. June 19, 2007); Brant v. Barnhart, 506 Fed. Supp.2d 476, 482 (D. Kan. 2007); Samuel v. Barnhart, 295 F. Supp.2d 926, 952 (E.D. Wis. 2003); see Lee v. Barnhart, 117 Fed. Appx. 674, 676-677 (10th Cir. Dec. 8, 2004)(Step two is designed to weed out at an early stage those individuals who cannot possibly meet the statutory definition of disability. While the mere presence of a condition or ailment is not enough to get the claimant past step two, a claimant need only make a "de minimis"

---

[3] SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

showing of impairment to move on to further steps in the analysis); Church v. Shalala, 1994 WL 139015 at *2 (10th Cir. April 19, 1994)(citing to SSR 85-28, the court stated that step two is an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint); Newell v. Commissioner of Social Security, 347 F.3d 541, 547 (3rd Cir. 2003)(reasonable doubts on severity are to be resolved in favor of the claimant).

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

Plaintiff's treating physician, Dr. Khalid, indicated on February 25, 2014 that plaintiff would be unable to work. She could only sit for 30 minutes in a workday, could not lift, could seldom (1% to 10% of a workday; up to ¼ hour) bend, stoop, balance, manipulate with either hand, tolerate dust, smoke, fumes or noise. She could occasionally (11% to 33% of a workday; up to 2 2/3 hours) reach with either arm. She could

not work around dangerous equipment, operate a motor vehicle or tolerate heat or cold. She frequently suffers from pain and constantly suffers from fatigue. Dr. Khalid indicated that this condition has existed since December 1, 2012. Dr. Khalid indicated that the objective clinical findings which could reasonably be expected to cause the above identified limitations are uncontrolled diabetes and diabetic neuropathy (R. at 477-479).

The ALJ accorded no weight to the opinions of Dr. Khalid. The ALJ found that his opinions contained several significant limitations that are unsupported by the record. According to the ALJ, Dr. Khalid's opinions are inconsistent with the fact that in June 2014 she reported walking two hours each day for exercise. They are inconsistent with the fact that she has not developed any significant end organ damage from her hypertension, hyperlipidemia or diabetes mellitus. They are inconsistent with routine and conservative treatment that she has received. They are inconsistent with the treatment notes, as they do not document any significant neuropathy and the examination reports do not include any type of functional examination (R. at 26).

The only other medical opinion in the record is a report from Dr. Coleman, a non-examining physician who reviewed the record and issued a report on February 11, 2014. Dr. Coleman

9

incorrectly stated that the date last insured was March 3, 2013 (in fact it was March 31, 2014), and, according to Dr. Coleman, there was insufficient evidence in regards to plaintiff's allegations to make a medical decision. However, the report later indicates that the diagnoses of diabetes mellitus, thyroid gland-all disorders, and essential hypertension are all severe impairments (R. at 68-70). The ALJ noted the finding by Dr. Coleman that the records were insufficient to determine her functioning prior to the date last insured, and gave the opinion limited weight as Dr. Coleman used an incorrect date last insured. Furthermore, the ALJ stated that there is enough evidence in the record to determine plaintiff's functioning (R. at 25-26).

In the case of <u>Williamson v. Barnhart</u>, 350 F.3d 1097, 1099 (10th Cir. 2003), the ALJ rejected the opinion of a treating physician, and found at step two that plaintiff did not have a severe impairment at step two and was therefore not disabled. The court noted that the ALJ in that case had ordered that plaintiff undergo a comprehensive medical and psychological examination which found no evidence of injury or illness except for hypertension, and concluded that plaintiff was "healthy in mind and body." 350 F.3d at 1099. The court concluded that the record demonstrated that plaintiff was basically healthy, and further concluded that plaintiff failed to demonstrate that his

low weight substantially limited his ability to engage in basic work activities. Therefore, the decision of the ALJ was affirmed. 350 F.3d at 1100.

In the case of Langley v. Barnhart, 373 F.3d 1116, 1118 (10th Cir. 2004), the ALJ also determined that plaintiff did not have a severe impairment at step two and was therefore not disabled. In Langley, two treating medical sources offered opinions regarding plaintiff's limitations which were rejected by the ALJ. 373 F.3d at 1119-1122. The court held that in choosing to reject the treating physician's assessment, the ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgment, speculation or lay opinion. 373 F.3d at 1121. The court, noting the "de minimus" standard with regard to findings at step two, found that the Commissioner did not apply the correct legal standards, and reversed the decision of the Commissioner and remanded the case for further proceedings. 373 F.3d at 1123-1124.

In the case before the court, the ALJ discounted the opinions of Dr. Khalid because they are: (1) inconsistent with plaintiff's assertion in June 2014 that she walked two hours

11

each day for exercise,[4] (2) inconsistent with the fact that she had not developed any significant end organ damage from her hypertension, hyperlipidemia, or diabetes mellitus, (3) inconsistent with the fact that she required only routine and conservative treatment, and (4) inconsistent with his own treatment records, as Dr. Khalid does not document any significant neuropathy and his examination reports do not include any type of functional examination (R. at 26).

Dr. Khalid, in his report, opined that plaintiff could stand for 15 minutes at one time, but offered no opinion on how long she could either stand or walk in a workday (R. at 477). Thus, on its face, the opinions of Dr. Khalid are not clearly inconsistent with plaintiff's statement in June 2014 that she walked two hours each day for exercise.

The ALJ also relied on the lack of end organ damage, and plaintiff's routine and conservative treatment, to give no weight to the opinions of Dr. Khalid. Earlier in his opinion, the ALJ indicated that if plaintiff was as limited as alleged, it seems she would have exhibited loss of sensation on an ongoing basis and she would have required further treatment and additional testing (R. at 24). However, the ALJ failed to cite to any medical evidence regarding the relevance of end organ damage, or the lack of end organ damage, to the limitations set

---

[4] A medical report from June 27, 2014 states that plaintiffs walks for 2 hours daily (R. at 490).

out by Dr. Khalid.  Furthermore, there is no evidence from a physician that further testing or treatment would be warranted if plaintiff were as limited as Dr. Khalid alleged.  None of this was discussed by Dr. Coleman (who incorrectly believed that plaintiff's date last insured was March 3, 2013 instead of March 31, 2014).  The ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors. Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004)(the ALJ noted that Mr. Hamlin did not require an assistive device for his neck; the court pointed out that there was no evidence that any physician recommended an assistive device or suggested that one would have provided any pain relief, and concluded that an ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors).

Furthermore, the ALJ is not a medical expert on identifying the clinical signs typically associated with uncontrolled diabetes or diabetic neuropathy.  An ALJ is not entitled to sua sponte render a medical judgment without some type of support for his determination.  The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment. Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).  As was set forth above, an ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to

his or her own credibility judgments, speculation or lay opinion. Langley, 373 F.3d at 1121. Unlike the case in Williamson, in which the ALJ ordered a comprehensive medical and psychological examination which concluded that the plaintiff was healthy in mind and body, the ALJ in the case before the court failed to cite to any medical evidence that clearly contradicts the opinions set forth by Dr. Khalid.

Finally, the ALJ concluded that the findings of Dr. Khalid were inconsistent with the treatment records because Dr. Khalid did not document any significant neuropathy, and because the examination reports did not include any type of functional examination (R. at 26). Earlier, the ALJ stated that plaintiff did not report "any" difficulty with hand numbness or pain to her in hands or arm (R. at 24). However, Dr. Khalid, on February 25, 2014 (the same day he offered his opinions regarding plaintiff's limitations), found that plaintiff has neuropathy in her hands and feet, her left thumb locks up and she has difficulty grasping things with her hand, she has to manually straighten her thumb-it clicks, pops and is painful, she has diminished sensation on bilateral feet and left thumb trigger finger. He also diagnosed diabetes mellitus, uncontrolled (R. at 518, 519). On November 25, 2013, Dr. Khalid's treatment notes indicate that plaintiff's arms and legs

feel weak and that she has difficulty holding a cup or stirring a pot of soup (R. at 471).

The ALJ had previously noted that plaintiff had not undergone any type of testing to determine the extent of her neuropathy (R. at 24). However, although the lack of testing could provide a basis for not giving controlling weight to a medical opinion, it cannot serve as a basis to completely reject a medical opinion; instead the opinion must be evaluated using all of the relevant factors in order to determine what weight should be accorded to the opinion. Langley, 373 F.3d at 1120. Dr. Khalid stated that the objective clinical findings of uncontrolled diabetes and diabetic neuropathy could reasonably be expected to cause the limitations set forth in his report (R. at 479). Therefore, Dr. Khalid's medical records describe medically determinable impairments that could, according to Dr. Khalid, reasonably cause the described limitations. See Langley, 373 F.3d at 1120-1121 (Dr. Hjortsvang's medical records do describe medically determinable impairments that could reasonably cause the described limitations). The ALJ does not cite to any medical evidence which indicates that the medically determinable impairments, which the ALJ himself acknowledge existed with plaintiff (R. at 22), could not reasonably cause the described limitations set forth by Dr. Khalid. A treating physician's opinion may be rejected outright **only** on the basis

15

of contradictory medical evidence. Langley, 373 F.3d at 1121 (emphasis added).

A claimant's showing at step two is a de minimis screening device to dispose of groundless claims; reasonable doubts on severity are to be resolved in favor of the claimant. If the ALJ is unable to determine clearly the effect of an impairment or combination of impairments on the claimant's ability to do basic work activities, the sequential evaluation process should continue past step two. In the case before the court, plaintiff's treating physician offered an opinion that plaintiff has limitations which clearly indicate that plaintiff has severe impairments. A treating physician's opinion can be rejected outright only on the basis of contradictory medical evidence. The ALJ does not cite to any contradictory medical evidence. Unlike the case in Williamson, there was no medical examination showing that plaintiff was basically healthy, nor was there any examination or medical opinion that contradicted the opinions of Dr. Khalid. Even if the ALJ had a basis for not giving controlling weight to the opinions of Dr. Khalid, Dr. Khalid's records describe medically determinable impairments that could reasonably cause the described limitations. Dr. Khalid's records, as set forth above, note difficulties that plaintiff has in the use of her arms and hands, neuropathy in her feet and hands, diminished sensation in her feet and left thumb trigger

finger.  There was no medical evidence cited by the ALJ indicating that the medically determinable impairments could not reasonably cause the described limitations.  On the facts of this case, the court finds that substantial evidence does not support the ALJ's finding that plaintiff does not have a severe impairment at step two.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 29th day of August 2017, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge